Good morning, your honors. If you want to reserve time, the clock is counting down. Right, that was about to do it. Thank you. Good morning, your honors. My name is Howard Davis. I'm representing Petitioner Ararat Yesayan. I'd like to reserve about two minutes for rebuttal. The decision that is before this Court is the immigration judge's decision on remand and on appeal to board affirmed without opinion. And I think that the record compels a reversal. And I just wanted to go through some of the things that the judge brought up here. And one of the things that I find most disturbing is the way that he sees this whole venture on remand. When he starts off with his decision, he talks about the translation. And yet, completely ignoring that really the whole basis for the motion to reopen and the board's remand was the fact that the previous counsel had offered ineffective assistance of counsel and had his ineffective assistance had prevented the Respondent or the Petitioner from developing the case on the record below. When you look at the motion to reopen at particularly in the record at 738 to 742, the focus is on the fact that the previous attorney, Mr. Zekian, had not really investigated the case and helped develop. And this had an impact on the testimony and on the first statement connected to the asylum application. Well, counsel, doesn't this boil down to a credibility problem? Yes, it does. Okay. And isn't the fact finder designed in our system of jurisprudence to make findings a fact? Yes. And what's the test for us? Clearly erroneous? Well, it's a substantial evidence. Okay. So you have to take the testimony and the record made below and the IJ's finding and work around that. Right. Now, but and we're not fact finders. Right. But I think one of the problems here is that when you look at the Board's remand order, it everybody agrees that the first of all, everybody agrees, first of all, the Board agrees, the Respondent claimed and the I mean, the Petitioner claimed and the government did not even oppose the claims that All the BIA said was the record is remanded to the immigration judge for further proceedings consistent with this opinion, which meant, as I understood it, is on a motion to reopen, they reopen the proceedings. Correct. So that the errors of ineffective assistance of counsel could be addressed. That is, they can present additional evidence, which is what happened here. Correct. And it wasn't that you have to disregard everything that happened at the first hearing and start brand new. That's not what the BIA said. The BIA just sent it back down. It's reopened. And you continue on. New counsel can present new evidence. And that's all that happened here. But the thing is, is that the it's but the judge below didn't even hardly even took into account what it was that was presented before him. I mean, for example, there's a whole slew of things that that he didn't even question on remand, that there were certain specific things that he focused on. He focused on the leg shot, for example, the injury to the leg. Right. And that, for example, that to me is really a nonissue. Everybody agreed. And there was even a picture that showed the scar on the right side. The petitioner referred to it as being on the right side. The declarant and the sister in her testimony referred to it as being on the side. The declarations talk about a rib. The only one who referred to that as a hip was the judge. And so but everybody agrees that something happened on the right side. The distinction between a hip and a rib. One of the written declarations that came in at the second hearing, I forget which individual it was or which person it was, referred to the hip. But. I mean, to the rib. Right. Everybody referred to the rib. Right. Right. Everybody referred to the rib. I don't see there as being any discrepancy. I mean, it's everybody agrees it's on the side. And it's really a discussion among non-experts. And the judge did not say that he was an expert referring to this as a hip. It's a hip or the rib, but it's in the same area. So you would say that's a minor inconsistency. That is a very minor inconsistency. And I don't even think it's an inconsistency because the judge is the one who brought up the word hip. Everybody else said side or rib. What about the inconsistency in the reasons given for the sister not testifying in the first hearing and testifying in the second hearing? Well. That goes to credibility of somebody. Well, but the — well, first of all, since the sister wasn't there at the first hearing, she could not have been. Now, didn't he — didn't the Petitioner tell the I.J. at the first hearing that she didn't have anything to say, anything useful? Or his lawyer. Or the lawyer. Maybe he had a bad lawyer. But bad lawyers can create a question about credibility, too. Well, the — and that was — and that, I believe, is what the — the recognition in the motion reopened was the bad lawyering that did occur. And — But if the judge has to go and make credibility findings based on what's believable and if the cause of the problematic testimony is the lawyer or the witness, it's still a credibility. Witnesses don't want to get stuck with the result. But — but the — but the judge, the — so even if the attorney did mention something that she didn't really have much to offer in terms of — that was his — that was his main — that was his main thing. In fact, she had something to offer about events earlier on. Well, what she did have to offer, ultimately, no, she was — she was not a precipient witness of the times that Mr. Yesion was in. Right. But she did see him afterwards. And it is — I mean, it's clear that he didn't do much questioning to develop the — to develop the record. I think that — I mean, that — that is — you know, that's the problem here. There was a couple other — what was it, demeanor issue that the I.J. raised at the second hearing? Well, OK, as far as the demeanor — Long pauses. And? A couple instances — he said without — I didn't take much stock in this, but he said in a couple instances that the petitioner sort of expounded on his answers to the questions when they didn't call for such detail. Well, but, you know — Suggesting that his answers and story had been rehearsed. Well, I guess this is one of the problems — I guess one of the problems here. First of all, I — in going through all the record, I paid attention to all the different — to the kinds of pauses. First of all, the judge didn't really confront him about the pauses. Yes, sir, why are you pausing? Things like that. I mean, the whole thing was rehearsed, which, you know, if the court — if the judge has any concerns, then he has to confront the petitioner, and that he didn't do. So — but with regard to the pauses, he didn't say what it was, why the pauses were particularly interesting and were of any significance. People pause when they have to give an answer. They didn't — the record doesn't even indicate how long the pauses were or why they were particularly significant. But the whole thing was rehearsed. I mean, you know, at the beginning — you can't win with this judge. At the beginning — initially, at one point in his decision, the judge said, well, the petitioner didn't give much details about the election and all that. But then on remand, when he has a better attorney who prepared him better, then he's able to develop his case more. And he went into great detail. And in terms of — I think most of these questions were — were given as per — most of the answers were given as per the — as prompted as — as answers to questions posed by counsel. Roberts. So what are you asking us to do? Katyal. Well, what I'm asking to do is — well, what I prefer is, is that the adverse credibility decision be reversed and then with instructions to consider the substance of the claim. However, if not, then I think it should be sent back to the board to do really a — what I think is a fair looking into the record, because this is a very skewed decision. I mean, there were so many things that the judge did not even question. You're running out of time. And I'm running out of time. But as an alternative, then just send it down for a reconfiguration of the — of the — I'll give you a minute and 10 seconds for a rebuttal. Okay. Thank you. Let's hear from the government. May it please the Court, Christina Periscindola for the Attorney General. Here the record supports an adverse credibility finding. There are two substantial reasons that go to the heart of Mr. Yassayan's claim that the immigration judge found. The immigration judge only has to provide one reason. And as long as he has provided the petitioner an opportunity to explain any inconsistencies and has considered the explanation, that adverse credibility decision is supported. And the immigration judge need not go to the merits of the asylum and withholding of removal claim. And the two incidents are — or the two inconsistencies are that regarding the December 2001 incident, when the petitioner, Mr. Yassayan, testified that he injured his hip. And he actually produced a photograph showing an injury to his hip. Yet he submitted four declarations from people who knew him personally saying that he was injured in his rib. He was offered an opportunity to explain that. And he said, well, no, it was in my hip. And his counsel — Didn't he show his hip to the IJ at the first hearing? I don't recall that from the decision. I know he offered to do that the second time. But I think the IJ said, well, the photograph is fine. And he authenticated this photograph saying this was — So what does it tell us about the fact that the declaration said his rib instead of his hip? What are we supposed to take? That they weren't truthful or that he wasn't truthful when he has a photograph of the injury? I don't know how to take it. But, you know, when the immigration judge doesn't know what to believe — He did say that he was injured in his hip. Not all the declarations that he produced said rib. Okay. There is — his father submitted a declaration. That's at page 460. An employee of Mr. Yassayan's, his father-in-law, and his wife submitted a declaration saying that when he fell, he hurt his right rib, as well as his pharmacist. And a pharmacist is someone who should know the difference between a hip and a rib. You may be right. I may be mistaken on what I just said. Okay. And, you know, his counsel tried to, I guess, rehabilitate the claim by saying, well, it was his right side. So, you know, what's the difference? And, you know, basically we have to defer to the immigration judge. He adjudicates asylum cases day in and day out. And, you know, I don't think the record compels a finding that, well, this is just, you know, a minor inconsistency. So is it that he produced declarants who weren't truthful? Is that what affects his credibility? Your Honor, I can't say. There's no finding that the declarants were not truthful. But this case was remanded by the board, as the Petitioner's counsel said, because of allegations of ineffective assistance of counsel during the first hearing. And the two complaints that Mr. Eustein's new counsel had were that his former counsel did not develop his testimony, and secondly, that he did not introduce corroborating evidence. So on remand, now the immigration judge has the case again. The new counsel, we have a hearing where new counsel again develops testimony, and also the Petitioner submits what's supposed to be corroborating evidence. And yet it contradicts his own testimony. So what's the other ground that you rely on? The other ground is that Mr. Eustein testified that he was beaten so badly he could not even stand on his feet during an incident where he was interrogated at Department 6 in October 2000. And his sister submitted a declaration also stating that, yes, Mr. Eustein and his brother were beaten so badly that they could not walk. Yet Mr. Eustein himself submitted a declaration in 2002 with no mention of being beaten. Also, he – his brother mentions that he and his mother were taken there, and there's no mention of them being beaten. So these are obviously contradictory. Anything else? Your Honor, if there are no further questions, I don't have anything to add except that if the Court does decide that the record compels a reversal of the adverse credibility finding, it must remand the case to the Board under the Supreme Court's decision in Ventura for further fact findings. Thank you. Okay. First of all, just again I want to reiterate that with regard to the hip versus the rib, the only one who mentioned the word hip was the judge. He created a – again, this is a discussion among non-medical experts. Everybody else either said the right side, which is not side. It all appears on the side. It's not a contradiction in the sense that it – one thing can't exist if the other does. How about with the last comment that counsel made regarding the brother, whether the brother was beaten and whether he was beaten in – was it 96? No. Or 95? It was in – I think it was October 2001. It was the same thing when they're all acute, that they were all potential accusations of bribery if they don't sign certain papers. That, first of all, with regard to the original declaration, again, that's part of the taint of the original lawyer's ineffective assistance of counsel, which was trying to be corrected on remand. But secondly, it's irrelevant, the whole thing with the brother. The mystery assigned is basing his claim on what happened to him. I mean, even if there were certain things that were not mentioned about the brother in an original application, et cetera, then it's – he's not basing it on what happened to his brother. It's a minor inconsistency at worst. Now, with regard to the – actually, I just wanted to say, again, the judge – there are many things the judge did not specifically mention, what happened to him in 96 and 98 and 99 and in April of 2002, which precipitated his departure. And this Court has held that if the judge is not specifically questioned, then it must be accepted as true. The judge just did not do a proper weighing. And I want to say one thing about the whole – This is it. I'm sorry? Your last comment. My last comment was the whole thing about May of – the May 1999 incident. At the original hearing, the – before the lawyer, Mr. Zekin, went on direct, he asked, do you adopt this statement as your statement? And he said, yes. And that mentioned the May 1st, 1999 things. And he started to go into certain questions and was pretty much rushing him. So that's kind of like an adoption of the statement. And I see I'm out of time. Thank you. Thank you. That matter is submitted. And we'll go next to Dowie v. Fleischman-Hillard.
judges: Goodwin, Beezer, Paez